Slip Op. 10-125

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HIEP THANH SEAFOOD JOINT STOCK CO., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Consol. Court No. 09-00270 |

[Administrative review results remanded.]

Dated: November 5, 2010

Mayer Brown LLP (Matthew J. McConkey, Jeffrey C. Lowe) for Plaintiff Hiep Thanh Seafood Joint Stock Company.

Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Richard P. Schroeder) for Defendant United States.

Akin, Gump, Strauss, Hauer & Feld, LLP (Valerie A. Slater, Jarrod M. Goldfeder, Nicole M. D'Avanzo, Natalya D. Dobrowolsky) for Defendant-Intervenors Catfish Farmers of America, America's Catch, Consolidated Catfish Companies, LLC, d/b/a Country Select Fish, Delta Pride Catfish Inc., Harvest Select Catfish Inc., Heartland Catfish Company, Pride of the Pond, Simmons Farm Raised Catfish, Inc., and Southern Pride Catfish Company, LLC.

**OPINION**

Gordon, Judge: This action involves a new shipper review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam. See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 74 Fed. Reg. 29,473 (Dep't of Commerce June 22, 2009) (final results third new shipper reviews), as amended, Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 74 Fed. Reg. 37,188 (Dep't of Commerce

July 28, 2009) (amended final results admin. review) ("Final Results"); see also Issues and Decision Memorandum for Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, A-552-801 (June 15, 2009) ("Decision Memorandum"), available at http://ia.ita.doc.gov/frn/summary/vietnam/E9-14607-1.pdf (last visited Nov. 5, 2010).

Before the court is the motion for judgment on the agency record filed by Hiep Thanh Seafood Joint Stock Co. ("Hiep Thanh"). Hiep Thanh challenges Commerce's inclusion within Hiep Thanh's U.S. sales database certain sales (1) that Hiep Thanh allegedly believed had an ultimate destination of Mexico, (2) that Hiep Thanh knew would be shipped through the United States, and (3) that did not in fact arrive in Mexico, but were instead entered for consumption in the United States. The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006).

**Background**

In early 2008 Hiep Thanh requested an administrative review as a new shipper of frozen fish fillets to the United States. Request for a New Shipper Review (Feb. 25, 2008), PD 1.[2] Hiep Thanh claimed that it had exported and entered one shipment of subject merchandise during the appropriate period for a new shipper review and provided Commerce supporting documentation for that shipment. Id. at 1. Commerce sent Hiep Thanh a deficiency letter advising Hiep Thanh that a review of United States Customs and

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

[2] "PD__" refers to a document contained in the public administrative record. "CD__" refers to a document contained in the confidential administrative record.

Border Protection ("Customs") data indicated that Hiep Thanh had additional entries during the period of review. Deficiency Letter (Feb. 28, 2008), PD 3 at 1. Commerce requested that Hiep Thanh provide an explanation for the discrepancy. Id. In response, Hiep Thanh stated, among other things, that "it had no knowledge of any U.S. consumption entries in addition to the one presented in the new shipper request." Resp. to Deficiency Letter at 2 (Mar. 3, 2008), PD 7; see also Supp. to New Shipper Review Request (Mar. 14, 2008), PD 9.

Commerce thereafter initiated a new shipper review for Hiep Thanh. In response to Commerce's request for the details of Hiep Thanh's United States sales, Hiep Thanh asserted that it had "directly sold some product to a U.S. customer [Company 2] during the [period of review, but] to Hiep Thanh's knowledge, all of that product was imported into Mexico and not the United States." Sec. A Resp. at 18 (item 4(j)) (May 5, 2008), PD 17. Similarly, for United States sales data, Hiep Thanh reported only the sales associated with the single entry upon which it had requested the new shipper review and did not provide any information for the additional entries Commerce had found in Customs data. See Sec. C Resp. at 3 & Exhs. 2 & 3 (May 21, 2008), CD 8; PD 27.

In response to another questionnaire, Hiep Thanh indicated that it had made nine sales to Company 2; that the merchandise subject to these sales "was not imported into the United States;" and that merchandise "imported into Mexico is not subject to the antidumping case and thus [it] would be inappropriate to include them in the Section C database." Hiep Thanh's 2nd Supp. Quest. Resp. at 2 (Oct. 15, 2008), CD 25; PD 60. The shipping documents provided by Hiep Thanh indicated that Hiep Thanh shipped the

merchandise subject to these nine sales to the United States. Id. at Exhibit 2, Sale Nos. 1 through 9. The lab analysis and sanitary certifications for each sale indicate a final destination in Mexico. Id.

In the Final Results Commerce included in Hiep Thanh's United States sales database the sales to Company 2 that entered the United States for consumption. See Decision Memorandum at 17.

## Standard of Review

When reviewing Commerce's antidumping determinations under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), the U.S. Court of International Trade sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally,

though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., <u>Administrative Law and Practice</u> § 10.3[1] (2d. ed. 2009). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Edward D. Re, Bernard J. Babb, and Susan M. Koplin, 8 <u>West's Fed. Forms, National Courts</u> § 13342 (2d ed. 2009).

Separately, the two-step framework provided in <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. <u>Dupont Teijin Films USA, LP v. United States</u>, 407 F.3d 1211, 1215 (Fed. Cir. 2005); <u>Agro Dutch Indus. Ltd. v. United States</u>, 508 F.3d 1024, 1030 (Fed. Cir. 2007). "[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under <u>Chevron</u>." <u>Pesquera Mares Australes Ltda. v. United States</u>, 266 F.3d 1372, 1382 (Fed. Cir. 2001); <u>see also</u> <u>Wheatland Tube Co. v. United States</u>, 495 F.3d 1355, 1359 (Fed. Cir. 2007) ("[W]e determine whether Commerce's statutory interpretation is entitled to deference pursuant to <u>Chevron</u>.").

## Discussion

Commerce explained its decision to include Hiep Thanh's sales to Company 2 as follows:

> Similar to our conclusion in Comment 4 above, we find that only those sales that entered the United States for consumption during the POR should be included in the margin calculation, specifically only type 3 entries. Based on documents generated in the course of the negotiation and sales

>process, indicating a U.S. destination, Hiep Thanh knew or should have known that the goods in question were destined for the United States at the time of the sale. Thus, such sales should be reported to the Department in accordance with section 772(a) of the Act. The Department placed information on the record that definitively shows that certain sales to Company 2 entered the United States for consumption i.e., on November 4, 2009, the Department placed import data collected by CBP on the record that demonstrated that these sales were entered for consumption. See Memorandum to the File from Tom Futtner, Customs Unit, to James C. Doyle, Director Office 9, dated November 3, 2008, Request for U.S. Entry Documents—Certain Frozen Fish Fillets from the Socialist Republic of Vietnam (A-552-801). Based on the CBP data, the Department requested Hiep Thanh to report these sales in its U.S. sales database. Consequently, for these final results, based on CBP data and Hiep Thanh's updated U.S. sales database, we will include these sales in the margin calculation. This determination is also consistent with Magnesium from Russia because we have evidence on the record that certain sales to Company 2 entered for consumption and that Hiep Thanh knew or should have known that these sales were destined for the United States. However, we will not include sales in the margin calculation where we do not have evidence that they were entered for consumption or were not type 3 entries.

Decision Memorandum at 17.

It is undisputed that Hiep Thanh manufactured and sold subject merchandise that entered the United States for consumption during the period of review. Dumping liability for those sales must reside somewhere. The question is whether Hiep Thanh or some other party in its sales distribution channel should bear liability. For Hiep Thanh the nine sales in question do not belong in its U.S. sales database because, according to Hiep Thanh, 19 U.S.C. § 1677a(a) assigns liability to the first party in the chain of distribution that sells subject merchandise with actual or constructive knowledge that the sale is to an unaffiliated purchaser for exportation to the United States. Hiep Thanh contends that it

lacked the requisite knowledge for the sales in question. Hiep Thanh does not attempt to explain who should bear responsibility for the sales.

Hiep Thanh focuses its argument on a straightforward substantial evidence challenge to Commerce's finding from the Final Results that Hiep Thanh knew or should have known its merchandise was "destined for the United States." Pl.'s Mem. of Law in Supp. of Mot. for J. upon Agency R. at 8. Hiep Thanh argues that the record evidence overwhelmingly supports its contention that it only knew its merchandise had an ultimate destination in Mexico, and that no reasonable fact finder could conclude that Hiep Thanh knew or should have known that the United States was the ultimate destination. Id. at 8-10.

Hiep Thanh's argument assumes that Commerce analyzed whether Hiep Thanh knew or should have known that the merchandise was ultimately destined for the United States as a consumption entry. Id. at 7. It is certainly possible that Commerce performed such an analysis. There is, however, another possible interpretation of the Final Results, one in which Commerce may have applied a slightly different standard to address the sales in issue that did not depend on Hiep Thanh's knowledge of the "ultimate destination" of the merchandise, but rather Hiep Thanh's more limited knowledge that the merchandise was destined in some form for the United States (as a transshipment) coupled with actual consumption entries that Hiep Thanh may not have known about.

In other words, when Commerce determined that Hiep Thanh knew its

merchandise was "destined for the United States," Decision Memorandum at 17, Commerce may have simply been referring to the undisputed fact that Hiep Thanh actually knew the merchandise was going to be shipped to the United States. With that more limited finding, Commerce may then have chosen, as a matter of gap-filling, policy-making discretion, to place the onus on a manufacturer like Hiep Thanh to affirmatively demonstrate that the subject merchandise has, in fact, made it to the ultimate destination and is not entered for consumption in the United States. If the manufacturer cannot make that proffer, and the merchandise enters the U.S. for consumption as happened here, then Commerce may have decided to include those sales within the manufacturer's U.S. sales database regardless of the manufacturer's actual or constructive knowledge of the ultimate destination of the merchandise. In the Final Results Commerce appeared to find dispositive the fact that Hiep Thanh's sales were entered for consumption. See id. ("The Department placed information on the record that definitively shows that certain sales to Company 2 entered the United States for consumption … . This determination is also consistent with Magnesium from Russia because we have evidence on the record that certain sales to Company 2 entered for consumption … . However, we will not include sales in the margin calculation where we do not have evidence that they were entered for consumption … ."). At the same time, Commerce devoted little if any effort on the topic of what Hiep Thanh knew or should have known about the sales, limiting its analysis and conclusion to one sentence: "Based on documents generated in the course of the negotiation and sales process, indicating a

U.S. destination, Hiep Thanh knew or should have known that the goods in question were destined for the United States at the time of the sale." Id.

The point though is that the court cannot conduct substantial evidence review of Commerce's finding that Hiep Thanh knew or should of known that the subject merchandise was "destined for the United States" until Commerce clarifies which standard it applied when it affixed liability for the sales to Hiep Thanh. The court will therefore remand this matter to Commerce to provide a further explanation. Depending on the outcome, the issue may evolve from a single substantial evidence question addressing one specific finding to one that implicates the Chevron framework as Commerce applies (or interprets) the antidumping statute to address the sales in question.

The court notes that Defendant's brief posits three post hoc justifications for Commerce's action that Commerce did not articulate in the Final Results. First, Defendant makes a Chevron step one argument that Hiep Thanh's sales were made to an unaffiliated purchaser and shipped to the United States, placing those sales squarely within the statute's definition of U.S. price as "the price at which the subject merchandise is first sold … to an unaffiliated purchaser for exportation to the United States … ." 19 U.S.C. § 1677a(a). Def.'s Resp. to Pl.'s R. 56.2 Mot. for J. upon Agency R. at 7-8.

Second, Defendant explains (in what appears to be a Chevron step two analysis) that Commerce's "knowledge test" was formulated by Commerce to identify the cross-border price discriminator in a given sales transaction. Id. at 9-10 (citing 19 U.S.C.

§1677a(a) and Wonderful Chem. Indus., Ltd. v. United States, 27 CIT 411, 416, 259 F. Supp. 2d 1273, 1279 (2003)).  Third, Defendant then argues (again in what appears to be a Chevron step two analysis) that inclusion of Hiep Thanh's sales within the margin calculation is necessary to serve as some sort of anti-fraud device to prevent parties from manipulating margin calculations by doctoring sales documentation to indicate that a sale was transiting through the United States with some other ultimate destination.  Id. at 11.

Importantly, Commerce made no mention of the above three justifications in the Final Results.  The court "may not affirm on a basis containing any element of discretion—including discretion to find facts and interpret statutory ambiguities—that is not the basis the agency used, since that would remove the discretionary judgment from the agency to the court."  ICC v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 283 (1987); see also SEC v. Chenery Corp., 332 U.S. 194, 196–97 (1947) (" … a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); Burlington Truck Lines v. United States, 371 U.S. 156, 168–69 (1962) ("The courts may not accept … counsel's post hoc rationalizations for agency action; … an agency's discretionary order [must] be upheld, if at all, on the same basis articulated in the order by the agency itself."); Timken Co. v. United States, 894 F.2d 385, 389 (1990) ("The first mention of these justifications appears in Commerce's appeal brief before the CIT. '[A]gency action cannot be sustained on post hoc rationalizations supplied

during judicial review.'")(quoting Tabor v. Joint Bd. for Enrollment of Actuaries, 566 F.2d 705, 709–710 (D.C. Cir. 1977)).

If Commerce believes that counsel's proposed justifications for its action are legitimate, then the agency needs to formally adopt them, and possibly amplify or revise them against whatever countervailing considerations and arguments Hiep Thanh raises in its comments during remand. The court can then, if applicable, (1) review under the Chevron framework Commerce's interpretation and application of the antidumping statute to formulate standards or criteria to affix liability for the disputed sales, and/or (2) perform substantial evidence (reasonableness) review of (a) Commerce's fact finding and conclusions about Hiep Thanh's sales, and/or (b) Commerce's adherence to its announced standards or criteria.

## CONCLUSION

For the foregoing reasons the court cannot sustain the Commerce's Final Results. Accordingly, it is hereby

**ORDERED** that this action is remanded to Commerce to further explain its decision to include the disputed sales within Hiep Thanh's U.S. sales database; it is further

**ORDERED** that Commerce shall file its remand results on or before January 12, 2011; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

                                                           /s/ Leo M. Gordon
                                                 Judge Leo M. Gordon

Date: November 5, 2010
        New York, New York