Slip Op. 11-74

UNITED STATES COURT OF INTERNATIONAL TRADE

HIEP THANH SEAFOOD JOINT STOCK CO.,

                    Plaintiff,

          v.                                              Before: Leo M. Gordon, Judge

UNITED STATES,                                            Consol. Court No. 09-00270

                    Defendant.

[Remand results remanded.]

Dated: June 23, 2011

          Mayer Brown LLP (Matthew J. McConkey, Jeffrey C. Lowe) for Plaintiff Hiep Thanh Seafood Joint Stock Co.

          Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Richard P. Schroeder); and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (David Richardson), senior counsel, for Defendant United States.

          Akin, Gump, Strauss, Hauer & Feld, LLP (Valerie A. Slater, Jarrod M. Goldfeder, Nicole M. D'Avanzo, Natalya D. Dobrowolsky) for Defendant-Intervenors Catfish Farmers of America, America's Catch, Consolidated Catfish Companies, LLC, d/b/a Country Select Fish, Delta Pride Catfish Inc., Harvest Select Catfish Inc., Heartland Catfish Company, Pride of the Pond, Simmons Farm Raised Catfish, Inc., and Southern Pride Catfish Company, LLC.

**OPINION and ORDER**

          Gordon, Judge: This action involves the third new shipper review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam. Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 74 Fed. Reg. 37,188 (Dep't

of Commerce July 28, 2009) (amended final results admin. review) ("<u>Final Results</u>"); <u>see also</u> Issues and Decision Memorandum, A-552-801 (June 15, 2009), <u>available at</u> http://ia.ita.doc.gov/frn/summary/VIETNAM/E9-14607-1.pdf (last visited June 23, 2011) ("<u>Decision Memorandum</u>").   Before the court are the Final Results of Redetermination (Jan. 31, 2011) ("<u>Remand Results</u>") filed by Commerce pursuant to <u>Hiep Thanh Seafood Joint Stock Co. v. United States</u>, 34 CIT ___, 752 F. Supp. 2d 1330 (Nov. 5, 2010) ("<u>Hiep Thanh</u>") (order remanding to Commerce).   The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006).   For the reasons set forth below, the court remands this matter to Commerce for further consideration.

## Standard of Review

When reviewing Commerce's antidumping determinations under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), the U.S. Court of International Trade sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."   19 U.S.C. § 1516a(b)(1)(B)(i).   More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.   <u>Nippon Steel Corp. v. United States</u>, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).   Substantial evidence

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review.   3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d. ed. 2011).   Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Edward D. Re, Bernard J. Babb, and Susan M. Koplin, 8 West's Fed. Forms, National Courts § 13342 (2d ed. 2010).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. Dupont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005); Agro Dutch Indus. v. United States, 508 F.3d 1024, 1030 (Fed. Cir. 2007).   "[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under Chevron." Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 2001); see also Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed.

Cir. 2007) ("[W]e determine whether Commerce's statutory interpretation is entitled to deference pursuant to <u>Chevron</u>.").

## Background

This case involves the proper treatment of sales of subject merchandise made by respondent/producer Hiep Thanh Seafood Joint Stock Co. ("Hiep Thanh") to an unaffiliated Mexican customer who entered the merchandise for U.S. consumption. The issue is whether these sales should be included within Hiep Thanh's margin calculation as part of Hiep Thanh's U.S. sales database, or accounted for elsewhere within the new shipper review. In the <u>Final Results</u> Commerce included the sales within Hiep Thanh's U.S. sales database. <u>Decision Memorandum</u> at cmt 5. Hiep Thanh then commenced this action, arguing that Commerce erred because Heip Thanh had no knowledge, actual or constructive, that those sales were destined for U.S. customers. <u>Hiep Thanh</u>, 34 CIT at ___, 752 F. Supp. 2d at 1332, 1334. The court remanded the matter for further consideration by Commerce because it was unclear from the <u>Decision Memorandum</u> whether Commerce (1) applied its standard "knowledge test" to analyze the sales in question, or (2) may have applied a different framework that did not depend on Hiep Thanh's knowledge of the "ultimate destination" of the merchandise, but rather Hiep Thanh's more limited knowledge that the merchandise was destined in some form for the United States (as a transshipment) coupled with actual consumption entries that Hiep Thanh may not have known about. <u>Id.</u> at 1335.

In the <u>Remand Results</u> Commerce has provided a more detailed explanation of its decision to include the sales within Hiep Thanh's U.S. sales database. Nevertheless,

for the reasons that follow, the court cannot sustain the Remand Results, and again remands the matter to Commerce for further consideration.  Familiarity with the Remand Results is presumed.

## Discussion

Hiep Thanh contends that this is a simple case that turns on the meaning of the phrase—"for exportation to the United States"—in the antidumping statute's U.S. price provision, which defines export price, in relevant part, as "the price at which the subject merchandise is first sold . . . to an unaffiliated purchaser for exportation to the United States."  19 U.S.C. § 1677a(a).   There is no dispute that Hiep Thanh's Mexican customer was the first unaffiliated purchaser of the subject merchandise or that Hiep Thanh shipped the subject merchandise to the United States.   The only question is whether that shipment constitutes "exportation" within the meaning of the statute.   In the Remand Results Commerce concludes that it does:

> [T]he sales at issue meet the definition of a U.S. sale under 19 U.S.C. § 1677(a) as these sales were made to an unaffiliated purchaser for exportation to the United States.  . . .  A review of the evidence on the record shows that in the commercial invoices Hiep Thanh indicated shipment was to be made to a United States port. . . . The accompanying bills of lading for these shipments indicated that the port of discharge for these sales at issue was in the United States.  In other words, the product was exported to the United States and delivered to the United States.  Upon arrival, the entries were classified as type 3 entries (consumption).  Hiep Thanh essentially asks the Department to ignore these record facts which ultimately satisfy 19 U.S.C. § 1677(a).  Hiep Thanh's knowledge of whether the subject merchandise would be re-exported to a third country is a mere assumption, when compared to the action taken—shipped to the United States and purchased from an unaffiliated customer.  As such, Hiep Thanh was in a position to price discriminate between the U.S. market and other markets as they sold the merchandise to an unaffiliated customer for delivery in the United States.  As the merchandise was entered into the United States for consumption subject to AD/CVD duties,

those sales provide the appropriate prices to be included in the antidumping duty calculation.

Remand Results at 7-8.

The above excerpt from the Remand Results makes it appear that this is indeed a simple case, one in which Hiep Thanh's sales to the Mexican customer fit squarely within the purview of 19 U.S.C. § 1677a.  Nevertheless, the court cannot sustain this determination in its present posture because the Remand Results are wanting in two respects:  First, Commerce does not adequately summarize the sales in issue, which prevents Commerce from reasonably addressing the record evidence that suggests that Hiep Thanh's sales to the Mexican customer, at least from Hiep Thanh's perspective, were for exportation to Mexico and not the United States.  Second, to the extent that Commerce's determination interprets the phrase "exportation to the United States," the Remand Results have too many internal inconsistencies and unexplained conclusions to constitute a reasonable construction of the statute.

Commerce correctly notes that Hiep Thanh delivered the subject merchandise to the Mexican customer at a U.S. port, and that the U.S. port was noted on the commercial invoices.  The record, though, reveals much more about the full context of these sales.  Hiep Thanh made the sales to the Mexican customer by first using an unaffiliated third party on commission to negotiate the volume and value.  See Hiep Thanh Verification Report at 8, CD 35 at frm. 8.[2]   It appears that Hiep Thanh dealt with the Mexican customer for the first time during the period of review.  The commercial invoices and packing lists name the Mexican customer and specify the ultimate

---

[2] "CD __" refers to a document contained in the confidential administrative record.

destination of the product as "Mexico via [a port within the United States]."  See, e.g., Confidential Joint Appendix, Tab P3, Ex. 3, Attachs. B, C, & D, ECF No. 48.  The sanitary certificates also indicate a final destination in Mexico.  Id.  The bills of lading, however, only list shipment to the U.S. port (with no subsequent Mexican destination), but identify both a U.S. and Mexican contact.  Id.  Once the shipment was received by the Mexican customer at the U.S. location (apparently by its agent), the Mexican customer (through its agent) entered the product for consumption in the United States. See, e.g., id., Tab P4.  Hiep Thanh made a number of similar sales to the same Mexican customer that were shipped to the same U.S. location, but were then shipped to Mexico.  See, e.g., id., Tab P2.  These other sales were not included in Hiep Thanh's U.S. sales database.  Remand Results at 6.  Additionally, Hiep Thanh made a number of similar sales to a U.S. customer that were also shipped to the same U.S. location, but those sales were not entered for consumption by the U.S. customer; these sales were also not included in Hiep Thanh's U.S. sales database.  Decision Memorandum at cmt 4.

Hiep Thanh explained in its briefs to the court that the Mexican customer requested that the sales be shipped through the U.S. for logistical efficiency.  Pl.'s Resp. to Remand at 5, ECF No. 58 ("To save on shipping costs, the customer requested that Hiep Thanh transport the product to the continental United States, where it was to be shipped in-bond to Mexico for formal importation and sale in that country.") There is no direct record evidence to substantiate that claim, but it might reasonably be inferred from Hiep Thanh's experience with sales to the same Mexican customer that

were entered for consumption in Mexico, as well as Hiep Thanh's experience with a U.S. customer who also requested shipment to the United States for sales ultimately destined for Mexico.  An important question remains:  How did Mexican sales, shipped to the United States for logistical efficiency, enter the U.S. for consumption?  Hiep Thanh pleads ignorance, placing blame on the Mexican customer.  Id. at 5-6 ("unbeknownst to Hiep Thanh, some (but not all) of the product was imported for consumption in the United States by the unaffiliated customer.").    Perhaps, unbeknownst to Hiep Thanh, the Mexican customer believed it was purchasing wholesale product for both the Mexican and U.S. markets.  Perhaps the Mexican customer and/or Hiep Thanh's third party liaison lied to Hiep Thanh about the ultimate market for the sales.  Or perhaps Hiep Thanh knew the Mexican customer would distribute the product to either Mexico or the U.S. and included the additional Mexican references in the invoices and sanitary certificates in case the customer sold the merchandise in Mexico.  The possibilities are varied and numerous because the administrative record does not provide a clear answer.

Additional insight and analysis of the sales, however, may not be relevant if Hiep Thanh's delivery of subject merchandise to a U.S. port (without additional safeguards against entry for consumption) constitutes "exportation to the United States."  As noted from the quoted excerpt above, Commerce so concludes, but its proffered interpretation of the statute, including a discussion of its "knowledge test," makes this supposedly simple case decidedly more complex.

Recall that the court remanded the matter for further consideration because it was unclear from the <u>Decision Memorandum</u> whether Commerce applied its standard "knowledge test" or some other framework when concluding that the sales should be included within Hiep Thanh's U.S. sales database.  <u>Hiep Thanh</u>, 34 CIT at ___, 752 F. Supp. 2d at 1334-35.   In the <u>Remand Results</u> Commerce discusses its "knowledge test", explaining that the test (1) emerged from the statute's U.S. price provision (quoted above), and (2) reflects the guidance of the Statement of Administrative Action that accompanied the Trade Agreements Act of 1979: "if the producer knew or had reason to know that the goods were for sale to an unrelated U.S. buyer ... the producer's sales price will be used as [the U.S. price]."   Statement of Administrative Action accompanying the Trade Agreements Act of 1979, H.R. Rep. No. 4537, 388, 411, <u>reprinted in</u> 1979 U.S.S.C.A.N. 665, 682 ("SAA").  <u>Remand Results</u> at 4.  Commerce has elsewhere explained:

> If . . . the producer has no knowledge of sales to the United States made by a reseller (where a producer believes the ultimate consumer for its sales is the customer in the home market or third country), then those sales are not included in the Department's margin analysis for the producer because the proper respondent for these sales to the United States is the reseller.

Antidumping and Countervailing Duty Proceedings:  Assessment of Antidumping Duties**,** 68 Fed. Reg. 23,954, 23,957 (Dep't of Commerce May 6, 2003)**.**   In the <u>Remand Results</u> Commerce further explains that the purpose of the "knowledge test" is to identify "the price discriminator" for the U.S. sale, <u>Remand Results</u> at 3, and that "[i]t is the activity of the price discriminator for which the antidumping law provides a remedy." <u>Id.</u>

Commerce concludes that because Hiep Thanh shipped the subject merchandise to the U.S., "Hiep Thanh was in a position to price discriminate between the U.S. market and other markets, and thus these sales belong in Hiep Thanh's U.S. sales database for calculating their antidumping duty margin." Id.  Commerce offers this conclusion without any analysis of the actual pricing of the sales in issue; there is no comparison of the pricing to the other Hiep Thanh sales that passed through the U.S. to Mexico.  It would be interesting to learn Commerce's thoughts if the sales in issue have similar pricing as the Mexican sales, and whether that might indicate that for the sales in issue Hiep Thanh was price discriminating for the Mexican, not the U.S., market.  Commerce also fails to account for the role of the Mexican customer that entered the merchandise for consumption.  Hiep Thanh may have been in a "position" to price discriminate, but the record suggests that the Mexican customer actually did because the Mexican customer was responsible for the consumption entry.  And while failing to account for the role of the Mexican customer in its "price discriminator" analysis is an unreasonable omission, it is not the only problem with Commerce's application of its "knowledge test."

In response to Hiep Thanh's arguments that the commercial invoices, packing lists, and sanitary certificates demonstrated that Hiep Thanh had knowledge of Mexican, not U.S., sales, Commerce concludes that it need not consider that record evidence, stating that it would be "inappropriate because it would place certain respondents in a position to exclude U.S. sales from reporting requirements by claiming them as sales to be shipped through the United States when, in reality, the sales remain in the United

States and are entered for consumption subject to AD/CVD duties."  Remand Results at 5-6.  Such antifraud concerns may well be important for Commerce's administration of antidumping proceedings, but one wonders what remains of a knowledge test that excludes the very evidence that establishes the respondent's knowledge of the sales?

A further problem with the Remand Results is Commerce's citation to Allegheny Ludlum Corp. v. United States, 215 F. Supp. 2d 1322, 1331 (2000) to support its conclusion that Hiep Thanh's "shipment" constitutes "exportation" to the United States. See Remand Results at 3 ("This conclusion is supported by [Allegheny Ludlum] insofar as there is evidence on the record to demonstrate that Hiep Thanh knew that the merchandise was being shipped to the United States.").  The word "shipment" does not appear in Allegheny Ludlum, which, among other things, sustained Commerce's interpretation of 19 U.S.C. § 1677b(a) and corresponding determination that certain sales belonged in a respondent's home market database.  Allegheny Ludlum, therefore, does not appear to address the issue of "exportation" to the United States or whether certain U.S. sales should be included within a producer's (Hiep Thanh's) or reseller's (the Mexican customer's) margin calculation.   Without further explanation from Commerce, it is difficult to understand its relevance here.

Finally, there is the issue of the "knowledge test" itself.  The guidance from the SAA quoted by Commerce in the Remand Results focuses on whether "the producer knew or had reason to know that the goods were for sale to an unrelated U.S. buyer." SAA, 1979 U.S.S.C.A.N. 665, 682.  Framed for this case, the inquiry would seem to be whether Hiep Thanh knew or had reason to know that the subject merchandise sold to

the Mexican customer ultimately was for sale to an unrelated U.S. buyer.  Likewise, the

knowledge test contemplated in Commerce's assessment rate policy focuses on

whether the "producer has no knowledge of sales to the United States made by a

reseller (where a producer believes the ultimate consumer for its sales is the customer

in . . . [a] third country)," 68 Fed. Reg. at 23,957, which applied here would question

whether Hiep Thanh had no knowledge (actual or constructive) of the Mexican

customer's U.S. sales, believing the ultimate consumer for those sales was a customer

in Mexico.  In the Remand Results Commerce articulates a more limited "standard" of

"whether the party making the first sale to the unaffiliated party knew or should have

known at the time of the sale that the merchandise was going to the United States."

Remand Results at 5 (emphasis added).  With that knowledge test in hand, Commerce

easily reaches the forgone conclusion that Hiep Thanh's "knowledge at the time of the

sale" that it was "shipping the goods to the United States" is "enough to satisfy the

knowledge test."  Id.  Commerce adds, somewhat repetitively: "With the requirement at

the time of sale that the merchandise was to be shipped to the United States, Hiep

Thanh knew or should have known that the goods were being shipped to the United

States, regardless of whether the stated intent of the [Mexican customer] was to

subsequently ship the goods to Mexico."  Id.

Commerce's "finding" that "Hiep Thanh knew or should have known that the

goods were being shipped to the United States," id., is especially curious because Hiep

Thanh freely admitted that fact during the administrative review.  It was not in dispute.

Such "fact-finding", coupled with the needless repetition, makes it seem like Commerce

is simply trying too hard to justify a particular result.  What is more problematical, though, is Commerce's additional qualifier about the irrelevance of "the stated intent of the [Mexican customer] . . . to subsequently ship the goods to Mexico."  That conclusion seems irreconcilable with the knowledge test contemplated by the SAA or Commerce's assessment rate policy, under which the intent of the Mexican customer seems all too relevant for analyzing Hiep Thanh's knowledge of whether the sales would be sold in Mexico or the U.S.  Such preclusion also prompts the question of how Commerce can reasonably identify the "price discriminator" for the U.S. sale when the actions and intent of the Mexican customer are removed from consideration?

In the court's view Commerce's <u>Remand Results</u> raise more questions than they resolve and do not reasonably decide the issue of the proper treatment of Hiep Thanh's sales to the Mexican customer.  The court, however, is not prepared to order Commerce to exclude the sales from Hiep Thanh's U.S. sales database.  The law and record evidence are not so clear as to dictate that result; it may be one possible outcome, but it is not mandated.  Because the statute does not specifically resolve whether individual sales of subject merchandise should be included within a particular respondent's U.S. sales database, Commerce must exercise its gap-filling discretion to derive a reasonable approach to the problem.

On remand Commerce can cure one obvious defect with the <u>Remand Results</u> by beginning with a reasonable summary of the sales in issue, like the one the court provides in the paragraph that begins at the bottom of page 6 of this opinion.  From there, Commerce may wish to simplify its approach by first addressing the basic issue

of statutory interpretation presented by this case: whether Hiep Thanh's shipment to the U.S. constitutes "exportation" within the meaning of the statute.  Although Commerce concludes in the Remand Results that it does (in the excerpt from pages 7-8 block-quoted above), Commerce does so without ever defining the term "exportation."  The agency needs to put forth its interpretation of that term on the record.  Commerce can also explain how circumspect a producer like Hiep Thanh needs to be when shipping subject merchandise to the United States to a new customer.  The court can then review Commerce's interpretation and explanation for reasonableness against "the express terms of the provisions at issue, the objective of those provisions, and the objectives of the antidumping scheme as a whole."  Wheatland Tube Co., 495 F.3d at 1361 (citation omitted).

        As for the "knowledge test," it is a framework that Commerce has used to resolve various issues in the past.  See Wonderful Chem. Indus. v. United States, 27 CIT 411, 416, 259 F. Supp. 2d 1273, 1279 (2003) (listing instances in which knowledge test has been applied).  None of the numerous cases involving Commerce's application of the knowledge test, though, provide much guidance here.  For example, the Court in LG Semicon Co. v. United States, 23 CIT 1074 (1999), notes that "Commerce interprets the phrase 'for exportation to the United States' to mean that the reseller or manufacturer from whom the merchandise was purchased knew or should have known at the time of the sale that the merchandise was being exported to the United States."  Id. at 1079 (emphasis in original) (citation omitted).  That circular formulation, however, does not answer the question of what "export" or "exportation" means, the central issue here.  It

may be that once Commerce provides an interpretation of the term "exportation," resort to the knowledge test may be unnecessary.  That though is a matter for Commerce to decide.

### Conclusion

For the foregoing reasons the court cannot sustain the Commerce's <u>Remand Results</u>.  Accordingly, it is hereby

**ORDERED** that this action is remanded to Commerce to further explain its decision to include the disputed sales within Hiep Thanh's U.S. sales database; it is further

**ORDERED** that Commerce shall file its remand results on or before August 10, 2011; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.


                                                    /s/ Leo M. Gordon
                                                 Judge Leo M. Gordon

Dated: June 23, 2011
          New York, New York