Slip Op. 12-19

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HIEP THANH SEAFOOD JOINT STOCK CO., | |
| Plaintiff, | Before: Leo M. Gordon, Judge |
| v. | Consol. Court No. 09-00270 |
| UNITED STATES, | |
| Defendant. | |

[Remand results sustained.]

Dated: February 15, 2012

Matthew J. McConkey, Jeffrey C. Lowe, Mayer Brown, LLP, of Washington, DC, for Plaintiff Hiep Thanh Seafood Joint Stock Co.

Richard P. Schroeder, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice and David Richardson, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce.

Valerie A. Slater, Jarrod M. Goldfeder, Nicole M. D'Avanzo, Natalya D. Dobrowolsky Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, for Defendant-Intervenors Catfish Farmers of America, America's Catch, Consolidated Catfish Companies, LLC, d/b/a Country Select Fish, Delta Pride Catfish Inc., Harvest Select Catfish Inc., Heartland Catfish Company, Pride of the Pond, Simmons Farm Raised Catfish, Inc., and Southern Pride Catfish Company, LLC.

**OPINION**

Gordon, Judge: This action involves the third new shipper review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam. Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 74 Fed. Reg. 37,188 (Dep't

of Commerce July 28, 2009) (amended final results admin. review) ("<u>Final Results</u>"); <u>see also</u> Issues and Decision Memorandum, A-552-801 (June 15, 2009), <u>available at</u> http://ia.ita.doc.gov/frn/summary/VIETNAM/E9-14607-1.pdf (last visited Feb. 15, 2012) ("<u>Decision Memorandum</u>").   Before the court are the Final Results of Redetermination (Sept. 30, 2011) ("2<u>nd</u> <u>Remand Results</u>"), ECF No. 68, filed by Commerce pursuant to <u>Hiep Thanh Seafood Joint Stock Co. v. United States</u>, 35 CIT ___, 781 F. Supp. 2d 1366 (June 23, 2011) ("<u>Hiep Thanh II</u>") (order remanding to Commerce).   The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006).   For the reasons set forth below, the court sustains the 2<u>nd</u> <u>Remand Results</u>.

### Standard of Review

When reviewing Commerce's antidumping determinations under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), the U.S. Court of International Trade sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."   19 U.S.C. § 1516a(b)(1)(B)(i).   More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.   <u>Nippon Steel</u>

---

[1]  Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).  Substantial evidence

has been described as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229

(1938).  Substantial evidence has also been described as "something less than the

weight of the evidence, and the possibility of drawing two inconsistent conclusions from

the evidence does not prevent an administrative agency's finding from being supported

by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula

connoting reasonableness review.   3 Charles H. Koch, Jr., Administrative Law and

Practice § 9.24[1] (3d. ed. 2011).  Therefore, when addressing a substantial evidence

issue raised by a party, the court analyzes whether the challenged agency action "was

reasonable given the circumstances presented by the whole record." Edward D. Re,

Bernard J. Babb, and Susan M. Koplin, 8 West's Fed. Forms, National Courts § 13342

(2d ed. 2010).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural

Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984), governs judicial review of

Commerce's interpretation of the antidumping statute. Dupont Teijin Films USA v.

United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005); Agro Dutch Indus. v. United

States, 508 F.3d 1024, 1030 (Fed. Cir. 2007).  "[S]tatutory interpretations articulated by

Commerce during its antidumping proceedings are entitled to judicial deference under

Chevron." Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1382 (Fed.

Cir. 2001); see also Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed.

Cir. 2007) ("[W]e determine whether Commerce's statutory interpretation is entitled to deference pursuant to <u>Chevron</u>.").

## Background

    This case involves the proper treatment of sales of subject merchandise that respondent/producer Hiep Thanh Seafood Joint Stock Co. ("Hiep Thanh") made to an unaffiliated Mexican customer, and delivered to a U.S port, at which point the Mexican customer took title and then entered the merchandise for U.S. consumption.  The issue is whether these sales should be included within Hiep Thanh's margin calculation as part of Hiep Thanh's U.S. sales database, or accounted for elsewhere within the new shipper review.  In the <u>Final Results</u> Commerce included the sales within Hiep Thanh's U.S. sales database.  <u>Decision Memorandum</u> at cmt 5.  Hiep Thanh then commenced this action, arguing that Commerce erred because Heip Thanh had no knowledge, actual or constructive, that those sales were destined for U.S. customers.  <u>Hiep Thanh Seafood Joint Stock Co. v. United States</u>, 34 CIT ___, ___, 752 F. Supp. 2d 1330, 1334 (Nov. 5, 2010) ("<u>Hiep Thanh I</u>").   The court remanded the matter for further consideration by Commerce because it was unclear from the <u>Decision Memorandum</u> whether Commerce (1) applied its standard "knowledge test" to analyze the sales in question, or (2) may have applied a different framework that did not depend on Hiep Thanh's knowledge of the "ultimate destination" of the merchandise, but rather Hiep Thanh's more limited knowledge that the merchandise was destined in some form for the United States (as a shipment) coupled with actual consumption entries that Hiep Thanh may not have known about.  <u>Id</u>., 34 at ___, 752 F. Supp. 2d at 1335.

In the first remand Commerce provided a more detailed explanation of its decision to include the sales within Hiep Thanh's U.S. sales database.  See Final Results of Redetermination (Jan. 31, 2011) ("1st Remand Results"), ECF No. 53., filed by Commerce pursuant to Hiep Thanh I.  After reviewing the 1st Remand Results the court again remanded the action to Commerce.  Hiep Thanh II, 35 CIT at ___, 781 F. Supp. 2d at 1374.  Familiarity with prior administrative and judicial decisions in this action is presumed.

## Discussion

In the 2nd Remand Results Commerce reconsidered its application of its "knowledge test"[2] to determine whether to include the disputed sales within Hiep Thanh's U.S. sales database.  Commerce simplified its approach:

> Upon reconsideration on remand, we determine that while the knowledge test is a framework that is of use in identifying the first party in a transaction chain with knowledge of U.S. destination where there are multiple entities involved in such chains prior to importation, the framework is one that does not fit the fact pattern in this case. In this case, prior to importation, there were only two entities involved in the sale of the subject merchandise, Hiep Thanh and the unaffiliated purchaser. As such, the Department determines that the disputed sales are in fact U.S. sales that belong in Hiep Thanh's margin calculation because Hiep Thanh made the sales for exportation to the United States, and they fall squarely within the purview of 19 U.S.C.§1677a(a). Application of the knowledge test is neither necessary nor appropriate in these circumstances.

2nd Remand Results at 4.  Commerce further explained:

> Within the context of the facts of this case, the Department interprets "exportation to the United States" to mean any sale to an

---

[2] A full discussion of the "knowledge test" is provided in Hiep Thanh II, 35 CIT at ___, 781 F. Supp. 2d at 1371-74.

unaffiliated party in which merchandise is to be delivered to a U.S. destination, regardless of whether any underlying paper work may indicate possible subsequent export to a third country. We believe that if a sale is made for delivery of merchandise to the United States (and record evidence clearly indicates that the disputed sales were made as such), there is a significant potential for it to enter the U.S. market for consumption (as discussed below, the sales in question did, in fact, enter the United States for consumption). If the Department were not to take this approach, it would place certain respondents in a position to exclude U.S. sales from reporting requirements by claiming them as sales to be shipped through the United States when, in reality, the merchandise is entered for consumption and thus enters the commerce of the United States subject to antidumping duties.

While Hiep Thanh may have anticipated that the disputed sales were ultimately to be delivered to Mexico, via the United States, Hiep Thanh stated that these sales were made according to sales terms "X" indicating that the merchandise was delivered to the unaffiliated purchaser, Customer Z, at a U.S. destination, at which point transfer of title took place. Another unaffiliated company, Company Y, acted as the U.S. importer of record. These facts in their totality demonstrate that the merchandise was "for exportation to the United States" as the Department reasonably interprets the phrase under section 1677a(a) of the statute.

Id. at 6.

Hiep Thanh, for its part, still maintains that the sales should be excluded from its margin calculation.   Hiep Thanh argues that the disputed sales were made to a "Mexican customer, as documented by all sales and shipping documents."  Hiep Thanh Comments on 2nd Remand Results at 7 (emphasis in original), ECF No. 73.  The issue though is not whether the sales were made to a Mexican customer, but whether they were for "exportation to the United States."  19 U.S.C. § 1677a(a).  For Hiep Thanh to prevail (and obtain an order from the court directing Commerce to exclude the sales from Hiep Thanh's margin calculation), the administrative record must lead a reasonable mind to draw one and only one conclusion: the sales were for exportation to

Mexico and not the United States.  That conclusion, in turn, depends upon inferences to

be drawn from the available record evidence—inferences that must compete with direct

record evidence and other inferences (having perhaps an equal or better claim) that the

disputed sales were for exportation to the United States.

To explain further, Hiep Thanh would like Commerce and the court to infer that

sales to a Mexican customer must be Mexican sales for exportation to Mexico.  Hiep

Thanh, however, did not ship the disputed sales to Mexico.  The bills of lading detail

shipment to a U.S. port, with no subsequent Mexican destination.  See Confidential

Joint Appendix, Tab P3, Ex. 3, Attachs. B, C, & D, ECF No. 48.  As Commerce noted,

title transferred in the United States.  2nd Remand Results at 6.  Contrary to Hiep

Thanh's post hoc claims that the subject merchandise was supposed to be transported

"in-bond" to Mexico, Hiep Thanh Comments on 2nd Remand Results at 7, Hiep Thanh

shipped merchandise covered by an antidumping duty order to a U.S. port without any

arrangements for further transportation to Mexico, and without any qualification or

limitation against U.S. entry.  See Confidential Joint Appendix, Tab P3, Ex. 3, Attachs.

B, C, & D, ECF No. 48.  In short, Hiep Thanh delivered merchandise covered by an

antidumping duty order to a U.S. port, where title transferred to a Mexican customer,

who was free to, and did, distribute it in both the U.S. and Mexican markets.  Such facts

make it difficult to accept Hiep Thanh's hoped for inference that the disputed sales

(those entered for U.S. consumption) must have been for exportation to Mexico.  A

reasonable mind reviewing this administrative record would not have to conclude that

the disputed sales were for exportation to Mexico.

A fair criticism of the 2nd Remand Results is that Commerce's interpretation of the phrase "exportation to the United States" is not as rigorous as the court might prefer. Commerce could have provided some definitional context to the term "exportation" by (1) ascertaining its common or technical meaning, see generally NORMAN J. SINGER & J.D. SHAMBIE SINGER, 2A SUTHERLAND STATUTORY CONSTRUCTION §§ 47:28, 47:29 (7th ed. 2011); or (2) analyzing whether the definition of "exportation" used by U.S. Customs and Border Protection, 19 C.F.R. § 101.1, provides any helpful guidance.  Commerce instead chose to define the term through application to the particular facts on the administrative record.    2nd Remand Results at 6 ("These facts in their totality demonstrate that the merchandise was 'for exportation to the United States' as the Department reasonably interprets the phrase under section 1677a(a) of the statute."). Commerce also, however, did explain why mere delivery to a U.S. port (separate and apart from a subsequent consumption entry), constitutes an "exportation"; otherwise, certain respondents could "exclude U.S. sales from reporting requirements by claiming them as sales to be shipped through the United States when, in reality, the merchandise is entered for consumption and thus enters the commerce of the United States subject to antidumping duties." Id.

In its comments on the 2nd Remand Results, Hiep Thanh chose not to proffer a definition of the term "exportation."  Instead, Hiep Thanh argues that "Commerce may not reasonably set aside the knowledge test and may not apply its new rule in this case."  Hiep Thanh Comments on 2nd Remand Results at 2.  Although the court understands Hiep Thanh's desire to have Commerce apply a standard (a particular

knowledge test) that would produce Hiep Thanh's preferred result (exclusion of the sales), the court cannot ignore the administrative law standards governing this case. "Chevron contemplates administrative flexibility in the interpretation of silent or ambiguous statutes," Fujian Lianfu Forestry Co. v. United States, 33 CIT ___, ___, 638 F. Supp. 2d 1325, 1357 (2009), and "the statute does not specifically resolve whether individual sales of subject merchandise should be included within a particular respondent's U.S. sales database." Hiep Thanh II, 35 CIT at ___, 781 F. Supp. 2d at 1373. Commerce had before it a factual scenario it had not previously confronted. As such, it had to "exercise its gap-filling discretion to derive a reasonable approach to the problem." Id.

Hiep Thanh was the first to suggest that this case was "fairly simple." Hiep Thanh Comments on 1st Remand Results at 1, ECF No. 58. In the 2nd Remand Results Commerce embraced that simplicity, abandoning the self-imposed complexity of the 1st Remand Results. Commerce concluded that Hiep Thanh had sold subject merchandise to an "unaffiliated purchaser for exportation to the United States." 19 U.S.C. § 1677a(a). That conclusion finds reasonable support in the administrative record because, as explained above, Hiep Thanh made a direct shipment to the United States without any arrangements for further transportation to Mexico, and without any qualification or limitation against U.S. entry. Also included in Commerce's determination is a simple but clear policy objective to discourage respondents who deliver subject merchandise directly to the United States from too easily excluding sales from their margin calculations by pleading ignorance of subsequent consumption entries.

Consol. Court No. 09-00270                                              Page 10

Hiep Thanh has not supplied the court with a basis upon which to order Commerce to exclude the disputed sales from Hiep Thanh's database.  The statute does not mandate that they be excluded, and the administrative record does not require that a reasonable mind should exclude them either.  In sum, Commerce's 2nd Remand Results are (1) reasonable given the circumstances presented by the whole record (supported by substantial evidence) and (2) in accordance with law.  Judgment will be entered accordingly.


                                                  /s/ Leo M. Gordon
                                                  Judge Leo M. Gordon

Dated:  February 15, 2012
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HIEP THANH SEAFOOD JOINT STOCK CO., | |
| Plaintiff, | Before: Leo M. Gordon, Judge |
| v. | Consol. Court No. 09-00270 |
| UNITED STATES, | |
| Defendant. | |

**JUDGMENT**

This case having been submitted for decision, and the court, after due deliberation, having rendered opinions; now in conformity with those opinions, it is hereby

**ORDERED** that final results of the third new shipper review of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam. Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 74 Fed. Reg. 37,188 (Dep't of Commerce July 28, 2009) (amended final results admin. review), are sustained, except for the matters covered by the Final Results of Redetermination (Dep't of Commerce Sept. 30, 2011) ("2nd Remand Results"); it is further

**ORDERED** that the 2nd Remand Results are sustained; and it is further

**ORDERED** that the subject entries enjoined in this action, see Hiep Thanh Seafood Joint Stock Co. v. United States, Consol. Court No. 09-00270 (CIT Sept. 23, 2009) (order granting consent motion for preliminary injunction), ECF No. 18, must be liquidated in accordance with the final court decision, including all appeals, as provided for in Section 516A(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e) (2006).

                                                    /s/ Leo M. Gordon
                                                  Judge Leo M. Gordon

Dated:  February 15, 2012
          New York, New York